UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

    v.            **MEMORANDUM & ORDER**
                   21-CR-411 (WFK)

ARMANI MILLER,

      Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 17, 2023, Defendant Armani Miller ("Defendant") pled guilty to Count One of the Indictment, charging Defendant with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 57 months of custody, to be followed by two years of supervised release with special conditions, restitution in accordance with the Order of Restitution, forfeiture in accordance with the Order of Forfeiture, and a $100.00 mandatory special assessment.

## BACKGROUND

The instant offense was uncovered through a joint investigation by the United States Postal Inspection Service and the Department of Labor, Office of Inspector General into fraudulent unemployment benefits claims submitted to the New York State Department of Labor ("NYSDOL"). Presentence Investigation Report ("PSR") ¶ 6, ECF No. 186.

In March 2020, the President of the United States signed into law various acts for the purpose of providing financial assistance to individuals affected by the onset of the COVID-19 pandemic. *Id.* ¶¶ 8-12. Included among these legal measures were the Families First Coronavirus Response Act, which provided flexibility for state unemployment insurance ("UI") agencies and administrative funding to respond to COVID-19; and the Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), which expanded the ability of states to provide UI for workers impacted by COVID-19. *Id.* ¶¶ 9-10. The CARES Act also created new UI

1

programs, including the Pandemic Unemployment Assistance program and the Federal Pandemic Unemployment Compensation program. *Id.* ¶ 10. As the pandemic raged on, the President continued to authorize additional funding intended to alleviate Americans' pandemic-related financial hardship. *See id.* ¶¶ 13-14.

The NYSDOL operates New York's unemployment system and distributes UI benefits therein. *Id.* ¶ 7. It does so through primarily through the New York State Unemployment Insurance Fund ("NYSUIF"). *Id.* During the period covering the instant offense, the two primary methods for filing for NYSUIF benefits were (1) online through the NYSDOL website and (2) by telephone through a NYSDOL call center. *Id.* ¶ 15. Individuals obtained their NYSUIF benefits in a number of ways. *Id.* ¶ 16. Some claimants were issued KeyBank National Association ("KeyBank") debit cards to which NYSUIF benefits were credited. *Id.* Other claimants acquired reloadable cards issued by different banks and, after inputting their reloadable cards' information to the NYSDOL online portal, had those cards funded with NYSUIF benefits. *Id.* Other claimants, meanwhile, had NYSDOL deposit their NYSUIF benefits directly into personal bank accounts. *Id.*

Between June 2020 and April 2021, Defendant and his co-conspirators submitted and caused to be submitted approximately 250 fraudulent UI claims to NYSDOL using the personal identifying information ("PII") of real individuals ("the victims"). *Id.* ¶¶ 18-19. Defendant and his co-conspirators obtained the victims' PII by, *inter alia,* using Bitcoin to purchase it from individuals via Telegram, an encrypted messaging application. *Id.* ¶ 20; *see also* Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 245.

Once Defendant and his co-conspirators purchased their victims' PII using cryptocurrency funds and submitted the fraudulent claims, they obtained NYSUIF benefits on

KeyBank debit cards. *Id.* ¶ 22; *see also id.* (explaining three of Defendant's co-defendants had the NYSUIF benefits deposited directly into co-conspirators' bank accounts). Defendant and his co-conspirators went to banks, often together, to withdraw cash using those KeyBank debit cards. *Id.* ¶ 23. Indeed, the PSR details two instances where Defendant, accompanied by co-conspirators, attempted to withdraw money from Capitol One banks or ATMs using KeyBank debit cards. *Id.* During the timeframe of the instant offense, Defendant and his co-defendants took and posted pictures of themselves with and fanning out large quantities of cash, in designer clothes and accessories, and with luxury cars. *Id.* ¶ 25; Gov't Mem. at 3; *see also* Gov't Mem. at 2.

Altogether, Defendant and his co-conspirators received more than $1,750,000.00 as a result of their fraudulent scheme. *See id.* ¶ 19. However, if NYSDOL had not detected their scheme before issuing additional payments on pending claims, this figure would have been more than $8,900,000.00. *Id.* Defendant himself submitted and caused to be submitted at least 23 fraudulent claims in the victims' names, yielding approximately $255,212.00. *Id.* ¶ 30.

On May 14, 2021, the Government filed a then-sealed Complaint alleging, between June 2020 and April 2021, Defendant and others fraudulently filed unemployment insurance claims using the PII of third-party victims and fraudulently received UI benefits funded, in whole or in part, by COVID-19 pandemic assistance programs. Compl., ECF No. 1.

On August 5, 2021, a federal Grand Jury returned an Indictment charging Defendant with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2); access device fraud, in violation of 18 U.S.C. §§ 1029(a)(5) and (c)(1)(A)(ii); and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (b), (c)(4), and (c)(5). Indictment, ECF No. 70.

On February 17, 2023, Defendant pled guilty to Count One of the Indictment, charging Defendant with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2). Plea Agreement, ECF No. 160.

### Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

**A.   The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

   **1.   Family and Personal Background**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on February 5, 1997 in Brooklyn, New York to Davon and Tiffany King. PSR ¶ 72. Defendant's parents separated in approximately 2019. *Id.* Defendant's parents are both aware of the instant offense and remain supportive. *Id.* Defendant has three siblings, all of whom are aware of the instant offense and remain supportive. *Id.* ¶ 73. Defendant reported close relationships with his siblings and mother, and noted he and his father have grown apart in recent years. *Id.* ¶ 74.

Defendant was raised in a lower-middle income home in East Flatbush, Brooklyn. *Id.* ¶ 75. Defendant reported favorably on his childhood and neighborhood, although he noted the difficulties presented by his father's incarceration for the first 14 years of Defendant's life. *Id.* After Defendant's parents separated, Defendant's mother attempted suicide and Defendant dropped out of school. *Id.* ¶ 75; *see also id.* ¶ 84

Defendant has never been married and has no children. *Id.* ¶ 77.

### 2. Educational and Employment History

Defendant reported attending Samuel Tilden High School through 11th grade. *Id.* ¶ 84. As previously mentioned, Defendant dropped out of high school after his parents separated and his mother attempted suicide. *Id.* Defendant worked as a seasonal package handler for United Parcel Service for one month in 2019, and previously did some off-the-books work at his godfather's Brooklyn barber shop. *Id.* ¶¶ 85-86.

### 3. Prior Convictions

Defendant has two prior criminal convictions. In 2016, Defendant was sentenced for Scheming to Defraud in the Second Degree, stemming from Defendant and others using stolen and/or forged debit cards to obtain more than $4,000.00. *Id.* ¶ 64. While on pretrial supervision for the instant offense, Defendant committed and was convicted of Criminal Possession of a

Weapon in the Second Degree and Reckless Endangerment in the First Degree, stemming from Defendant and others shooting into a house. PSR Addendum at 1, ECF No. 243; PSR ¶¶ 5, 69. Defendant had not been sentenced for these most recent offenses as of the parties' sentencing submissions. *See* PSR Addendum at 1.

### 4. Medical and Mental Health

Defendant reported no history of chronic or serious physical or mental health problems. PSR ¶¶ 81-82.

### 5. Substance Abuse

Defendant did not report any history of alcohol abuse or illegal drug use. *Id.* ¶ 83.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

This offense was undoubtedly serious. As the Government put it:

> The defendant and his co-conspirators took advantage of a global pandemic—a time of tremendous suffering—to profit through an elaborate criminal scheme. The defendant and his co-conspirators used cryptocurrency to unlawfully purchase the PII of real victims on encrypted applications like Telegram, and then used that

> information to fraudulently apply for unemployment benefits from NYSDOL. In total, the defendant and his co-conspirators submitted fraudulent claims in the names of approximately 250 real victims, for which they received in excess of $1,750,000.

Gov't Mem. at 7. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C.  The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to Count One of the Indictment, charging him with conspiracy to commit access device fraud. As part of his Plea Agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a term of imprisonment of 71 months or below. Plea Agreement ¶ 4.

Defendant faces a statutory maximum term of imprisonment of seven and one-half years and no minimum term of imprisonment. 18 U.S.C. §§ 1029(b)(2) and 1029(c)(1)(A)(ii). Defendant also faces a statutory maximum term of supervised release of three years and no minimum term of supervised release. 18 U.S.C. § 3583(b). If Defendant violates a condition of release, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Defendant is also eligible for not less than one nor more than five years of probation, and, barring extraordinary circumstances, the Court must impose a fine, restitution, or community service as a condition of probation. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b). However, Probation notes Defendant appears unable to pay a fine based on his financial profile. PSR ¶ 91.

The Court is also required to impose a mandatory special assessment of $100.00 per count. 18 U.S.C. § 3013. Restitution in the full amount of each victim's losses as determined by the Court is mandatory in this case pursuant to 18 U.S.C. §§ 3663A and 3664. Per the Order of Restitution, Defendant is subject to restitution in the amount of $255,212.00. ECF No. 257. Defendant is further subject to a forfeiture money judgment of $255,212.00 pursuant to the Order of Forfeiture. ECF No. 251.

**D.     The Kind of Sentences and the Sentencing Range Established for Defendant's Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Probation asserts the applicable Guideline for conspiracy to commit access device fraud in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2), is U.S.S.G. §2B1.1, which provides a base offense level of six. PSR ¶ 50. Defendant is responsible for an actual loss amount of more than $1.5 million, resulting in a 16-level increase pursuant to U.S.S.G. §2B1.1(b)(1)(I). PSR Addendum at 1. Two levels are added pursuant to U.S.S.G §2B1.1(b)(2)(A) because the offense involved more than 10 victims. PSR ¶ 52. A further two levels are added pursuant to U.S.S.G. §2B1.1(b)(11)(C)(i) because the offense involved the unauthorized transfer or use of identification unlawfully to produce or obtain means of identification. PSR ¶ 53. Two more levels are added under U.S.S.G. §2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040, which prohibits fraud in connection with major disaster or emergency benefits. *See* PSR ¶ 54. Three levels are removed pursuant to U.S.S.G. §3E1.1 to account for Defendant's timely acceptance of responsibility for the offense. PSR ¶¶ 60-61. Altogether,

Probation calculates that Defendant's total adjusted offense level is 25. *Id.* ¶ 62; PSR Addendum at 1.

The Government agrees with most of Probation's calculations. *See* Gov't Mem. at 4-5. However, the Government argues, and the plea agreement reflects, Defendant should receive a further one-level reduction pursuant to U.S.S.G. Policy Statement 5K2.0 because there was a global resolution to the case. *See id.* at 5; Plea Agreement ¶ 2. Under the Government's Guidelines calculations, Defendant has a total adjusted offense level of 24. Gov't Mem. at 5. Defense counsel appears to agree with the Government's calculations and total adjusted offense level of 24. *See* Def. Mem. at 4-6. To the extent defense counsel's argument against utilizing a loss amount of more than $1.5 million rather than the $255,212.00 in loss caused by Defendant is an objection to the Guidelines calculation, *see id.*, the Court rejects this argument. Not only does the PSR Addendum reflect the Guidelines calculations are predicated on an actual rather than intended loss amount of more than $1.5 million, PSR Addendum at 1, but Defendant stipulated to Guidelines calculations utilizing an actual loss amount of $1.5 million in his plea agreement, Plea Agreement ¶ 2. Moreover, the Court agrees with the Government that Defendant "is appropriately held responsible for losses he personally caused, as well as those he aided and abetted, and those within the scope of jointly undertaken criminal activity." Gov't Mem. at 5 (citing U.S.S.G. §1B1.3); *see also* Application Note 3(A) to U.S.S.G. §1B1.3(a)(1).

The PSR reflects a criminal history score of one and a criminal history category of I. PSR ¶¶ 65-66. However, as the PSR Addendum explains, Defendant has since pled guilty to state criminal offenses, meaning Defendant has a criminal history score of two and a criminal history category of II. PSR Addendum at 1. Defense counsel objects to the PSR Addendum's criminal history calculation, arguing Defendant's recent criminal conviction should be

9

considered as relevant conduct but not count toward his criminal history score in light of the timing and circumstances of Defendant's conviction: Defendant pled guilty to avoid a trial in his state case after Defendant's sentencing hearing in the instant matter had been adjourned. Def. Objections to PSR Addendum at 1, ECF No. 244. The Government disagrees, as "[t]he Guidelines make plain that the defendant's criminal history must be calculated at the time of sentencing." Gov't Mem. at 6 (citing Application Note 1 to U.S.S.G. §4A1.2). The Court agrees with the Government and Probation: Defendant's recent state criminal conviction counts as a prior sentence for criminal history purposes, U.S.S.G. §4A1.2(a)(4), and the Court considers prior convictions at the time of sentencing when calculating a Defendant's criminal history score, Application Note 1 to U.S.S.G. §4A1.2.

According to Probation's calculations, the Guidelines imprisonment range is 63 to 78 months of imprisonment. Second PSR Addendum at 1. According to the Government, the Guidelines imprisonment range is 57 to 71 months of imprisonment. Gov't Mem. at 6. According to defense counsel's calculations, the Guidelines imprisonment range is 51 to 63 months of imprisonment. *See* Def. Mem. at 4-6. The Court adopts the position of the Government with respect to the Guidelines sentencing range.

The parties' sentencing recommendations vary. Probation recommends a below-Guidelines sentence of 57 months of custody; two years of supervised release with special conditions; restitution; and the $100.00 special assessment. Revised Probation Recommendation at 1-3, ECF No. 243-1. In recommending this sentence, Probation emphasizes: Defendant only being partially responsible for the total loss primarily driving the recommended Guidelines imprisonment range; Defendant's prior conviction for similar criminal activity; Defendant's

10

conduct and arrests while on pretrial release; and Defendant's age relative to many of his co-defendants. *Id.* at 2-3.

Defense counsel recommends a below-Guidelines sentence of 36 months of imprisonment, to run concurrently with the three-year sentence pending for Defendant's state offenses. Def. Mem. at 1, 6. In support of a non-Guidelines sentence, defense counsel argues Defendant's difficult childhood "contributed mightily" to Defendant's criminal activities. *Id.* at 3. Defense counsel specifically highlights the absence of Defendant's father, who was incarcerated until Defendant was 14-years-old; Defendant's eviction following his parents' divorce; and Defendant's mother's suicide attempt, which defense counsel maintains "caused [Defendant] to take responsibility for the family's finances." Def. Mem. at 2-4. Nonetheless, defense counsel notes Defendant acknowledges the severity of his criminal conduct, has taken complete responsibility therefore, and "believes he can re-invent himself.' *Id.* at 10-11.

Finally, defense counsel argues Defendant's experience in the harsh conditions at the Metropolitan Detention Center in Brooklyn warrants a downward variance, noting despite those conditions Defendant has no violent infractions, has completed numerous courses, and has maintained relationships with his family and girlfriend. *Id.* at 4; *see also* ECF No. 262 (BOP Course Certificates of Completion).

The Court has read and considered the letters written by Defendant's loved ones and supporters. These letters describe Defendant as a kind and compassionate young man and urge the Court to be merciful in its sentence. *See* ECF Nos. 262-1—262-3. The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends a Guidelines sentence of 57 to 71 months of imprisonment. Gov't Mem. at 7. The Government emphasizes the seriousness of the instant

11

offense combined with Defendant's "flaunt[ing of] his ill-gotten gains on social media" as warranting incarceration. Gov't Mem. at 7-8. The Government asserts a Guidelines sentence is necessary to effectuate both specific and general deterrence, specifically invoking Defendant's continued criminal conduct while on pretrial release, including the shooting of a private residence; the harms wrought by Defendant and his co-conspirators in taking advantage of Government programs; and the difficulty in detecting and investigating these types of financial crimes. *Id.* at 7-8. While the Government acknowledges Defendant's young age at the time of the offense, his difficult childhood, harsh conditions of confinement, and Defendant's profits on his fraudulent unemployment claims compared to his co-conspirators, it ultimately concludes that "a balance of the Section 3553(a) factors" do not weigh in favor of a variance from the recommended Guidelines sentence of 57 to 71 months. *Id.* at 8-9.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.   Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have pointed the Court to the policy statement at U.S.S.G. §5K2.0 governing the global resolution reduction. The parties have not pointed the Court to any other pertinent policy statements, and the Court has not found any on its own.

### F.   The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court premises its sentence on the nature and characteristics of this Defendant and the instant crime of conviction. It has carefully considered the purpose of the applicable Guidelines provisions and has adequately ensured the sentence it now imposes will avoid unwarranted sentence disparities. The Court further considers defense counsel's statistical arguments regarding both Eastern District and Second Circuit FY 2022 sentencing patterns. Def. Mem. at 12-13; *see also* Ex. to Def. Mem., ECF No. 239-1. The Government argues a sentence of 57 to 71 months would not yield any unwarranted sentencing disparities between Defendant and other similarly-situated defendants, including his co-conspirators. Gov't Mem. at 8-9.

### G.   The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Pursuant to 18 U.S.C. § 3663A, restitution is mandatory in this case. Defendant is subject to restitution in the amount of $255,212.00 pursuant to the Order of Restitution. *See* ECF No. 257.

## CONCLUSION

For the reasons set forth above, the Court determines a sentence of 57 months to be followed by two years of supervised release with both the standard conditions and special conditions, restitution in the amount of $255,212.00 pursuant to the Order of Restitution, forfeiture in the amount of $255,212.00 in accordance with the Order of Forfeiture, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addendum thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 14, 2024
Brooklyn, New York